# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-00135-SCT

*MICHAEL WAYNE WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/12/2006 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | VIRGINIA LYNN WATKINS |
| | WILLIAM R. LABARRE |
| | GINGER E. GIBSON |
| | FRANK L. McWILLIAMS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE BRELAND WOOD |
| DISTRICT ATTORNEY: | FAYE PETERSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/14/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     A three-count indictment was returned against Michael Wayne Williams in the Circuit

Court of Hinds County, Mississippi, First Judicial District, charging him with armed robbery,

kidnapping, and possession of a firearm as a convicted felon. After a trial, the jury found

Williams guilty of all counts. The trial court denied his motion for judgment notwithstanding

the verdict (JNOV) or in the alternative, a new trial. Aggrieved by the trial court's judgment,

Williams raises the following issues on appeal:

I. **Whether a Trial Court's Refusal to Allow a Non-testifying Defendant to Display His Teeth Before the Jury Violated the Defendant's Right to Present a Defense.**

II. **Whether the Trial Court Committed Reversible Error When it Admitted Prosecution Evidence Not Produced During Discovery.**

III. **Whether the Trial Court Committed Reversible Error in Admitting Evidence of a Prior Conviction.**

IV. **Whether the Trial Court Committed Reversible Error When it Denied Williams's Motion in Limine to Prohibit the State from Referring to His Arrest in a Stolen Vehicle.**

¶2. We find the trial court erred regarding Issues I and III, but that the errors were harmless considering the overwhelming evidence of guilt. We also find that Williams was able to present his theory of defense to the jury and accordingly was not prejudiced. We find no merit in Issues II and IV. We affirm the judgment of the trial court in toto.

## FACTS AND PROCEDURAL HISTORY

¶3. On January 31, 2005, Michael Wayne Williams approached Curtis Johnson at the Sprint Mart Gas Station on Watkins Drive in Jackson. Williams made small talk and eventually asked if Johnson would like to see some DVDs. Johnson made a purchase and left the store. In the parking lot, Williams motioned for Johnson to come see the DVDs. Johnson walked over to the white Lexus sports utility vehicle Williams was driving. As Johnson opened the back passenger door, Williams pointed a gun at him and told him to get in the vehicle. Johnson complied. Then Williams told Johnson to empty his pockets. Johnson gave Williams his cell phone and $600 in cash. A second man was in the car in the front passenger seat. Johnson asked to be released, but Williams left the store and drove onto Hanging Moss Road. Eventually, Williams slowed the vehicle and unlocked the back door.

2

Johnson jumped from the vehicle and ran back to the gas station. Johnson then got into his vehicle and drove to his house, where he asked his wife to call the police. An audio tape of the call was played for the jury, showing that she told police that Johnson had been robbed by someone in a Lexus.

¶4. Jackson Police Officer Anthony Reginal was dispatched to Johnson's home. When he arrived, he interviewed Johnson and then drove him back to the Sprint Mart to view its surveillance video. The video tape was unavailable at that time, but police later recovered it. The surveillance video was played for the jury and substantiated Johnson's account of the events that took place at the Sprint Mart.

¶5. On February 8, 2005, Jackson Police Officer Donald McCluskey noticed a suspicious white Lexus. He submitted a computer request to determine if the tag was that of a stolen vehicle, but the National Crime Information Center (NCIC) system was down. Officer McCluskey wrote down the tag number and took notice of the driver, Williams, and a female passenger. Later that day, when the NCIC system was working, Officer McCluskey ran the tag and determined that the white Lexus was stolen. Two days later, McCluskey again encountered Williams driving the stolen white Lexus and placed him under arrest.

¶6. Jackson Police Detective Perry Tate included Williams's photograph in a photographic lineup for Johnson. Johnson identified Williams as the man who robbed and kidnapped him at gunpoint, and he signed his name to verify this under Williams's photograph. The photo lineup was entered into evidence and published to the jury.

¶7. Williams was tried and convicted of armed robbery, kidnapping, and possession of a firearm by a convicted felon. Williams was sentenced to twenty-five years on Count I

3

(armed robbery); twenty years on Count II (kidnapping); and three years on Count III (convicted felon in possession of a firearm), all to be served concurrently with Count I.

## STANDARD OF REVIEW

¶8. The standard of review governing the admission or exclusion of evidence is abuse of discretion. **Brown v. State**, 969 So. 2d 855, 860 (Miss. 2007) (citing **Poole v. Avara**, 908 So. 2d 716, 721 (Miss. 2005)). Thus, "[a] trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." **Shaw v. State**, 915 So. 2d 442, 445 (Miss. 2005).

## LEGAL ANALYSIS

### I. Whether a Trial Court's Refusal to Allow a Non-testifying Defendant to Display His Teeth Before the Jury Violated the Defendant's Right to Present a Defense.

¶9. The issue is whether the exhibition of the defendant's teeth before a jury is testimonial, thereby subjecting the person to cross-examination. Also in question is whether a judge's prohibition of such a display violates a defendant's right to present a defense.

¶10. Williams contends that he was denied an opportunity to present a meaningful defense, violating his rights under the Sixth and Fourteenth Amendments to the United States Constitution. At trial, Williams raised the defense of misidentification. As part of this defense, Williams attempted to introduce into evidence, by way of exhibition to the jury, his gold teeth decorated with carved initials. Williams argues that such an exhibition would have shown the jury that his gold teeth were prominent. The circuit court ruled that such an exhibition would be testimonial and would therefore subject Williams to cross-examination.

4

Williams had elected not to testify. Williams argues that such an exhibition is not testimonial and, therefore, the trial court's ruling prohibited him from presenting his defense of misidentification.

¶11.   The State argues that the circuit judge acted within his wide discretion in refusing to allow Williams to display his teeth to the jury. The State points out that the jury was informed that Williams had gold teeth. The State asserts that Williams was not denied his right to present a meaningful defense, as he presented this defense to the jury through the cross-examination of numerous witnesses and during closing arguments.

¶12.   Because reversal is warranted only where an admission of evidence prejudiced the accused, the overriding issue is whether the circuit judge's prohibition of Williams displaying his teeth before the jury violated Williams's right to present a defense. *Shaw*, 915 So. 2d at 445. During the trial, Williams was able to support his defense of misidentification with evidence of his gold teeth. First, the victim testified that Williams had gold teeth. During cross-examination of the victim, defense counsel asked, "Do you remember the person who robbed you having gold bucked teeth?" The victim responded, "Yes. I know he has a couple of golds in his mouth in the front, but exactly where I don't know, but I do know it was some golds in his mouth though."

¶13.   Second, a police officer stated that the victim never mentioned his assailant's gold teeth. During cross-examination of a police officer, defense counsel asked, "Was he [the victim] able to give you any descriptions of anything unique about the man . . . what about buck gold teeth?" The officer answered, "No." Counsel for Williams asked, "Gold teeth with initials?" The officer responded, "He didn't tell me anything like that."

¶14.   Finally, defense counsel highlighted these statements in closing argument for the jury, asserting Williams's defense of misidentification to the jury.  In closing, defense counsel argued:

> Now, he [the victim] says he told the police the robber – or gave him a description of the robber.  Said he's got these gold teeth, but it's not in his written statement, and Officer Reginal denied hearing this.
>
> . . .
>
> Next Officer Reginal came to testify.  And you might remember one of the first things I asked him about was what kind of description Curtis Johnson [the victim] was able to give him the day this happened.  And he just kept saying, unknown, unknown, unknown, unknown height, unknown weight, unknown hair color.  Couldn't give any information about a mustache or gold teeth, two things I specifically asked him about.
>
> . . .
>
> Now, ladies and gentlemen, you've heard all of the inconsistency and the insufficiency of the evidence in this case, and we feel that you should have a reasonable doubt as to Michael Williams'[s] guilt.

¶15.   As Williams was able to introduce evidence of his gold teeth and was able to argue his misidentification theory before the jury, the circuit judge's ruling prohibiting Williams from displaying his gold teeth for the jury unless he testified did not violate his right to present a meaningful defense.

¶16.   Furthermore, Williams had other mechanisms for introducing evidence of his bucked gold teeth.  He could have testified, during which the defense could have pointed out this feature.  Williams could have presented a witness to testify about his prominent teeth, during which Williams could have sought to introduce a photo of Williams's teeth.

### Is an exhibition of teeth testimonial, thereby subjecting the person to cross-examination?

¶17.   The underlying issue is whether the formal exhibition of teeth before the jury is "testimonial," thereby subjecting the person to cross-examination.  The circuit court held that

6

such a display was testimonial and therefore opened the door to cross-examination. The United States Supreme Court and this Court make clear that the mere display of a physical body part is not testimonial and therefore does not, in and of itself, open the door to cross-examination.

¶18. In *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L.Ed. 908 (1966), the United States Supreme Court discussed the reach of the Fifth-Amendment right against self-incrimination. *Schmerber* dealt with the withdrawal of blood from a DUI suspect, and the Supreme Court held that such withdrawal did not violate the suspect's Fifth-Amendment privilege. *Id.* at 772. In *Burns v. State*, 729 So. 2d 203, 216 (Miss. 1998), this Court stated that "[a] mere handwriting exemplar . . . like the voice or body itself, is an identifying characteristic outside [the] protection [of the Fifth Amendment]."

¶19. Because the display of a physical characteristic is outside the protection of the Fifth Amendment, its exhibition to the jury would not interfere with a defendant's rights against self-incrimination. As such, a defendant would be able to exhibit or display physical characteristics without waiving his rights against self-incrimination. The circuit court erred in stating that such a display was testimonial and only allowable upon waiver of the defendant's rights against self-incrimination.

¶20. When faced with an error, this Court must review the record de novo to determine whether reversal is warranted. *Tran v. State*, 962 So. 2d 1237, 1247 (Miss. 2007). "Harmless-errors are those which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Id.*

7

¶21. Based on the record before us, we find the trial court's erroneous ruling to be harmless error which did not render the trial fundamentally unfair. As previously noted, Williams was able to introduce evidence of his gold teeth and argue his defense of misidentification to the jury. Williams was not prejudiced by the trial court's ruling, and reversal is not warranted.

**II.  Whether the Trial Court Committed Reversible Error When It Admitted Prosecution Evidence Not Produced During Discovery**.

¶22.    Williams claims that the trial court erred when it admitted an audiotape of a 911 telephone call to police reporting the robbery, which prosecutors failed to disclose pre-trial. Williams argues that the circuit court should have either granted a continuance or barred admission of the evidence.[1] The State points out that a thirty-minute recess was granted to allow the defense to research the issue, and another ten-minute recess was granted to allow the defense to confer with the presenting witness. The State maintains that the admission of the tape was permissible, as the circuit court followed the requirements of Uniform Rule of Circuit Court and County Court Practice 9.04(I).

¶23.    On the morning of the second day of trial, the State announced that it intended to introduce a 911 tape into evidence. Defense counsel objected and argued to the trial court that the tape should not be admitted because the defense was put on notice of its existence only the day before and it was not allowed to listen to the tape until the day the State sought its admission.[2] "It's not really given us sufficient time to deal with the tape." The State

---

[1] In his brief, Williams states, "the trial court should have either granted the *requested* continuance or refused to permit prosecutors to go forward with the evidence." (Emphasis added.) The record however, does not contain a *request* for a continuance.

[2] Defense counsel also argued, contemporaneously, that the tape should not be admitted into evidence because the State lacked a proper authenticating witness. This issue

8

responded that it had gotten the tape just the day before. Williams countered, saying, "they may have just gotten it yesterday, but obviously they knew about it before yesterday since they subpoenaed it." The State maintained that circumstances raised a "simple *Box* discovery issue" and that they "gave the discovery as soon as [they] got the tape." *See Box v. State*, 437 So. 2d 19 (Miss. 1983).

¶24. Williams's discovery requests sought "[a]ny physical evidence . . . which may be offered in evidence." At trial, defense counsel argued that the tape was not produced, nor was it indicated in the evidence log. The State argued that its discovery responses put Williams on notice of the existence of the tape because it said "the police officer while he was on patrol he received a call to respond to the house. That lets [sic] them know that somebody must have called the police and said, hey we need an officer to come to the house. So it's not like they didn't know there was a call made to the police."

¶25. Defense counsel ultimately requested time to research the tape's admissibility. The circuit court asked Williams's attorney how much time she would need. Williams's attorney responded, "We could probably find what we need in half an hour." The court then granted a thirty-minute recess. When deliberations resumed, Williams's attorney requested more time, which was denied. The circuit court found that Williams was put on notice the first day of trial when the victim testified that his wife called 911. The circuit court did grant an additional, ten-minute recess so defense counsel could confer with the presenting witness. The trial court held:

---

was not raised on appeal.

9

I believe while it technically was a discovery violation, I believe, because it was not timely furnished to the defense about the videotape [sic - audiotape] that the Court is of the opinion that there's no unfair prejudice to the defense, that they've had reasonable opportunity to talk with the purported witness as to the authenticity of the tape and that they've also had an opportunity to listen to the tape at 8:30 this morning and were put on notice late yesterday afternoon of the existence of the tape,

. . .

[T]he Court does deny the motion as it relates to discovery violation . . . .

***Whether Williams Waived This Issue By Failing to Seek a Continuance.***

¶26.    Uniform Rule of Circuit and County Court Practice 9.04 (I) states in pertinent part:

. . . .If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1) Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
2) If, after such opportunity, the defense claims unfair surprise or undue prejudice and ***seeks a continuance or mistrial***, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

URCCC 9.04 (I) (emphasis added).

¶27.    Defense counsel was informed about the existence of the tape on the evening prior to its admission, was allowed to listen to the tape the following morning before court, was allowed sufficient time to interview the witness called to present the tape, and was allowed the requested half hour to do legal research.  URCCC 9.04 (I)(1) requires the court to grant the defense an opportunity to examine the new evidence.  Williams's counsel already had been given an opportunity to examine the tape earlier that morning.

10

¶28.    In order for the requirements of Rule 9.04 (I)(2) to be invoked, the defense must (1) after such an opportunity, claim unfair surprise **and** (2) seek a continuance or mistrial.  While Williams did claim unfair surprise, he failed to seek a continuance or mistrial.  Williams did seek a recess, which was granted.

¶29.    "Rule 4.06 is designed to avoid 'ambush' or unfair surprise to either party at trial." *McCaine v. State*, 591 So. 2d 833, 836 (Miss. 1991) (decided under a prior version of this rule).  In this case, however, the trial judge noted that defense was put on notice of the existence of a 911 call by way of an interrogatory answer during the discovery phase of the case.  The defense argues that the "unfair surprise" was the introduction of a statement contained in the tape not the tape itself.  The tape includes a statement made by the victim's wife that Johnson was kidnapped in a Lexus.  While this statement did corroborate Johnson's testimony, evidence that a Lexus was used to perpetrate the crime was found throughout the record.  Johnson testified that Williams was driving a white Lexus when he kidnapped and robbed him at gunpoint.  The prosecution introduced a surveillance video which corroborated Johnson's testimony.  Officer Reginal testified that Johnson was robbed by an individual in a white Lexus.  Officer McCluskey testified that he arrested Williams in a stolen white Lexus.

¶30.    Defense counsel requested a recess and not a continuance as required by Rule 9.04, and therefore waived arguing this issue on appeal.  See URCCC 9.04.  Even if Williams had requested a continuance, the trial court's grant of two recesses complied with the requirements of the rule.  Admission of the 911 audiotape was not error.  Furthermore,  there was no unfair surprise that there was a 911 tape or that it might identify a Lexus.   There was

ample evidence that a white Lexus was used to perpetrate the crime. Even without the 911 call, there was ample evidence to support Williams's conviction, including the victim's photo line-up identification, the victim's testimony, and the corroborating gas station surveillance video.

> **III.** **Whether the Trial Court Abused Its Discretion When It Denied a Motion to Sever Counts Against the Defendant, or Alternatively, in Refusing to Allow the Defendant to Stipulate to a Prior Conviction of Armed Robbery.**

¶31. For issues of severance, this Court applies an abuse-of-discretion standard of review. *Rushing v. State*, 911 So. 2d 526, 532 (Miss. 2005). This Court fully discussed the applicable case law in *Rushing*.

> Mississippi law allows for both multi-count indictments and multi-offense trials under certain circumstances. In trials concerning multi-count indictments, severance is unnecessary in Mississippi if the acts or transactions are connected together as part of a common scheme or plan and if the indictment was otherwise proper. Miss. Code Ann. § 99-7-2 (Rev. 2000) states in pertinent part:
>
>> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.
>>
>> (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.
>
> The Mississippi Uniform Rules of Circuit and County Court Practice (URCCC) likewise address multi-count indictments. The provisions of URCCC 7.07 (A.) & (B.) are identical to the above statutory language.

*Rushing v. State*, 911 So. 2d 526, 532-33 (Miss. 2005).

12

¶32. In the present case, Williams presented a motion to sever or in the alternative to stipulate to a prior conviction on the first day of trial, outside the presence of the jurors and prior to opening statements. Williams's indictment included three counts: (1) armed robbery, (2) kidnapping, and (3) convicted felon in possession of a firearm. Williams argued in his motion that count three should be severed because his prior conviction was one of armed robbery. Williams asserted that if the State were required to present proof beyond a reasonable doubt of this prior conviction, such would constitute prejudice "so great as to affect the fair determination of the guilt or innocence of the defendant."

¶33. The issue was discussed at trial as follows:

BY MS. GIBSON [DEFENSE COUNSEL]: Your Honor, the defense has two motions. The first motion is a motion to sever.

. . .

Michael Wayne Williams is indicted in 06-0-072 with three counts, count one armed robbery, count two kidnapping and count three possession of a firearm by a convicted felon.

In order for the State to be able to prove that he has a possession of a firearm by a convicted felon, they obviously have to prove he is a convicted felon.

His prior felony conviction is for armed robbery, and our contention is that to allow them to go forward with count three in the same trial as count one and two would be extremely prejudicial because he's convicted of armed robbery, and he's on trial for armed robbery in this case.

We're moving under Rule 9.03 of the Uniform Circuit and Chancery Court Rules, and, as I have said previously, I do not know what the interplay is between Mississippi Code 99-7-2 and Uniform Circuit and Chancery Court Rule 7.07. Of course, those are the rules that allow for multi-count indictments.

And we are not saying that this indictment is defective in any way. I don't think we even need a *Corley* hearing. We admit that these transactions are interwoven.

13

I could not find a single case where our Supreme Court or Court of Appeals has made any pronouncement about how 9.03 is to interact with 99-7-2 and 7.07.

But Rule 9.03 says that the Court may grant a severance of offenses when if before trial it is deemed appropriate to promote a fair determination of the defendant's guilt or innocense of each offense.

And our contention is that the jury will not be able to fairly determine whether he is guilty of armed robbery in this case when they hear that he had a prior armed robbery conviction.

If the state denies our request to sever count three, we would like to go on and offer to stipulate to the fact that he has a prior felony conviction, and we have a stipulation prepared.

BY THE COURT:    All right.  Response by the State.

BY MS. MANSELL [COUNSEL FOR THE STATE]:    Your Honor, as I argued previously, both the Court of Appeals and the Supreme Court have repeatedly said in *Carter v. State*, which was rehearing denied August 15, 2006, that when a person has been convicted of a felony and they're charged with possession of a firearm by a convicted . . . felon, it is clear when a prior conviction is an element of the crime, the State is authorized to introduce evidence of the conviction and is not limited in its method of proof in that we do not have to stipulate.  We can put that prior conviction in or put testimony in to prove that he is a prior conviction felon.

In *Evans v. State*, 802 So. 2d 137, again it clearly says the statute does not limit the State to proving a single prior felony conviction or methods by which it may prove the prior conviction.

The only difference is that they are asking for a limiting instruction. Obviously, we would not object to that, and case law is clear that we're entitled to prove the prior convictions as part of the elements of the crime.

BY THE COURT:    All right.  Any reply by the defendant?

BY MS. GIBSON [DEFENSE COUNSEL]:    Your Honor, only that I certainly don't disagree with that.  That is what the case law says, and that's why we're trying to sever count three.

If we're not allowed to sever count three and the State will not agree to a stipulation, then I certainly agree that's how they are able to prove it, and that's when we would like to offer our limiting motion instruction to the Court if our motion is denied.

BY THE COURT: All right. Well, consistent with this Court's previous ruling last week, the Court is going to deny this motion on the part of the defendant based upon the case authority cited by the State, which is very strong support of the State's position in opposing this motion.

And, also, this Court under Rule 9.03 is given discretion to severance or not. The Court doesn't believe that there is any unfair prejudice under the circumstances and, also, in the interest of judicial economy, but, more importantly, the Court does not believe it's unfairly prejudicial under circumstances, and even more important than that, the case authority cited by the State is quite persuasive that the correct ruling of the Court is to deny the motion of the defendant. So a limiting order or instruction will be given if requested by the defendant.

¶34. The below limiting instruction was given following testimony of Williams's prior armed robbery conviction:

BY THE COURT: Members of the jury, I am going to read you what is known as a limiting instruction at this time.

You have heard testimony that the defendant Michael Wayne Williams has been convicted of a felony. You may only use this testimony to determine whether or not Mr. Williams is a convicted felon for purposes of count three of the indictment, possession of a firearm by a convicted felon.

The Court instructs you that this testimony must not be used as evidence of guilt as to counts one and two of the indictment, armed robbery and kidnapping.

¶35. In light of the fact that the counts are interwoven, a limiting instruction was given. Giving the trial court the deference it should be afforded, we find it acted within its discretion when it denied Williams's Motion to sever count three, convicted felon in possession of a firearm.

15

¶36.    With regard to Williams's motion to stipulate to his prior conviction, Williams argued

that introduction of his prior armed robbery to prove count three of the indictment would

unfairly prejudice the jury to convict him on the current armed robbery charge, count one.

Williams cited no case law before the trial court, but on appeal argues that *Old Chief v.*

*United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 547 (1997) (*Old Chief I*) is

dispositive of the issue.

¶37.    The State argued before the trial court that "where a prior conviction is an element of

the crime, the State is authorized to introduce evidence of the conviction and is not limited

in its method of proof."  The State cited *Carter v. State*, 941 So. 2d 846, 854 (Miss. Ct. App.

2006) and *Evans v. State*, 802 So. 2d 137, 140 (Miss. Ct. App. 2001) as support for its

argument.  The State incorrectly argued at trial that these cases were Mississippi Supreme

Court cases.  On appeal, the State correctly identified the cases as having been heard by the

Court of Appeals.  The State did not respond in any way to the citation of *Old Chief I*.

¶38.    In denying Williams's motions to sever or in the alternative to stipulate, the trial judge

stated,

> The Court doesn't believe that there is any unfair prejudice under the
> circumstances and also, in the interest of judicial economy, but, more
> importantly, the Court does not believe it's unfairly prejudicial under the
> circumstances, and even more important than that, the case authority cited by
> the State is quite persuasive that the Court is to deny the motion of the
> defendant.

¶39.    In *Old Chief I*, the United States Supreme Court reversed and remanded the case for

further proceedings where a district court had allowed the State to introduce evidence of a

defendant's prior conviction over the defendant's objection and where the defendant had

16

offered to stipulate to his prior conviction. *Old Chief I*, 519 U.S. at 172. On remand, the

Ninth Circuit Court of Appeals stated,

> Regardless of the defendant's offer to stipulate, the government is entitled to prove a prior felony offense through introduction of probative evidence. See *United States v. Breitkreutz*, 8 F.3d 688, 690 (9th Cir. 1993). Under Ninth Circuit law, a stipulation is not proof, and, thus, it has no place in the FRE 403 balancing process.
>
> . . .
>
> Thus, we hold that the district court did not abuse its discretion by allowing the prosecution to introduce evidence of Old Chief's prior conviction to prove that element of the unlawful possession charge.

*United States v. Old Chief*, 121 F.3d 448, 449 (9th Cir. 1997) (*Old Chief II*) (remanded for

resentencing on unrelated grounds)(internal citations omitted).

¶40.     This Court discussed *Old Chief I* in *Rigby v. State*, 826 So. 2d 694 (Miss. 2002). This

Court was faced therein with an offer to stipulate to prior DUI convictions in a felony DUI

case. The Court affirmed the conviction and held that "Prior DUI convictions are elements

of a felony DUI charge and are required to be submitted to a jury." *Rigby*, 826 So. 2d at 702.

*Rigby* expressly distinguished *Old Chief I* based on the charged offense, opining that, "the

nature of convictions that are elements of felony DUI is important." *Id.* The Court stated,

> **Old Chief is essentially the Supreme Court's interpretation of the Federal Rules of Evidence. Thus, in the very specific instance of a defendant charged as a felon in possession of a firearm, the Court found that the underlying felony, while an element of the crime, was irrelevant. In a felony DUI case, the nature of the underlying felonies is extremely relevant as only prior DUI convictions will justify the charge. Thus, Rigby's suggestion that we extend Old Chief's reasoning to DUI cases is more like attempting to fit a size six shoe on a size ten foot. It can not be done!**
>
> . . .
>
> Despite this finding, certain procedural safeguards are warranted if a defendant offers to stipulate to previous DUI convictions. The trial court should accept

such stipulations, and they should be submitted to the jury with a proper limiting instruction. The instruction should explain to the jury that the prior DUI convictions should be considered for the sole purpose of determining whether the defendant is guilty of felony DUI and that such evidence should not be considered in determining whether the defendant acted in conformity with such convictions in the presently charged offense. *See United States v. Munoz*, 150 F.3d 401 (5th Cir. 1998). . . . [T]he impact of the evidence of prior bad acts must be lightened as much as possible. Thus, if a defendant stipulates to the prior DUI convictions, a limiting instruction accomplishes this goal.

*Rigby*, 826 So. 2d 700-03 (emphasis in original). Where evidence of a prior conviction is a necessary element of the crime for which the defendant is on trial (i.e., possession of firearm by a convicted felon), but evidence of the *specific nature of the crime* for which the defendant was previously convicted (i.e., armed robbery), is not an essential element of the crime for which the defendant is on trial, as it is in DUI cases, the trial court should accept a defendant's offer to stipulate and grant a limiting instruction.

¶41. The count to which Williams sought to stipulate was, for all practical purposes, the same as that in *Old Chief*, possession of a firearm by a convicted felon. *Old Chief I*, 519 U. S. at 174. Furthermore, *Carter* and *Evans*, the cases cited by the State and relied upon by the trial court, where handed down prior to *Rigby*. More importantly, in neither of those cases did the defendants offer a stipulation. In the present case, the trial court gave Williams's limiting instruction, but denied his motion to stipulate. In light of this Court's interpretation of *Old Chief I* in *Rigby*, the trial court erred when it denied Williams's offer to stipulate to his prior conviction.

¶42. It is especially important to allow a stipulation when a defendant is being prosecuted on multiple offenses. When a prosecutor is faced with a scenario like this one, where the underlying conviction supporting a charge of possession of a firearm by felon is the same or

18

similar to one of the other offenses charged, then the prosecutor must articulate a reason to justify denying a defendant's offer to stipulate. The reason must illustrate why the probative value is not substantially outweighed by the potential prejudice.

¶43. However, "[f]ew, if any, prosecutions have been perfect, and there can be errors – even errors of constitutional proportions – which do not require reversal of a conviction." *Tran*, 962 So. 2d at 1246. Where an error is deemed harmless, reversal is not warranted. *Id.* at 1247. In the present case, we find the denial of Williams's offer to stipulate to his prior armed robbery conviction to be harmless error. Williams's conviction is supported by overwhelming evidence including the victim's photo line-up identification, the victim's testimony, as well as corroborating gas station surveillance videotape, and 911 audiotape. Although the trial court erred in denying the offer to stipulate, in light of the overwhelming evidence, the error is harmless.

**IV. Whether the Trial Court Committed Reversible Error When it Denied Williams's Motion in Limine to Prohibit the State from Referring to His Arrest in a Stolen Vehicle.**

¶44. "[A] motion in limine should be granted only when the trial court finds two factors are present (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." *Hersick v. State*, 904 So. 2d 116, 127 (Miss. 2004)(internal quotations omitted).

¶45. Williams argued at trial that reference to the fact that the vehicle in which he was arrested was allegedly "*stolen*" was irrelevant to the charges brought by the State and should not be admitted as it was "extremely prejudicial." Williams contends that any reference

should have been excluded under Mississippi Rule of Evidence 403 as irrelevant or under Rule 404(b) as evidence of another bad act.

¶46.    The State responded at trial that the introduction of evidence referring to the vehicle as "*stolen*," was admissible under an exception to Mississippi Rule of Evidence 404(b), specifically identity; that Williams's arrest in the stolen vehicle led to the identification of his involvement with the crimes charged, and the State has a right to tell a continuous story.

¶47.    The trial court, in denying Williams's motion in limine, stated,

> [I]t is the Court's opinion that this was interlinked with the identification of this running the tag on this Lexus, white Lexus, and running the tag led directly to the identification of this defendant in connection with the subject crime that he's charged with that we're in trial today.

¶48.    The general rule is that evidence of a crime, other than the one for which the accused is being tried, is not admissible. *Palmer v. State*, 939 So. 2d 792, 795 (Miss. 2006). However, there are exceptions to this general rule as provided by Mississippi Rule of Evidence 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶49.    Evidence of other crimes or bad acts also is admissible to tell the complete story so as not to confuse the jury. *Palmer*, 939 So. 2d at 795; *Ballenger v. State*, 667 So. 2d 1242, 1257 (Miss. 1995). "[T]he State has a legitimate interest in telling a rational and coherent story of what happened. Where substantially necessary to present to the jury the complete story of the crime, evidence or testimony may be given even though it may reveal or suggest

20

other crimes." *Palmer*, 939 So. 2d at 795 (internal citations and quotation marks omitted).

¶50.    "Even where evidence of other crimes is admissible under M.R.E. 404(b), it can not be admitted unless it also passes muster under M.R.E. 403. That is, the risk of undue prejudice must not substantially outweigh its probative value." *Ballenger*, 667 So. 2d at 1257. In the present case, evidence of Williams's arrest in a stolen vehicle was introduced to explain why he was arrested, how his picture came to be part of the photograph lineup, and how he ultimately was linked with the crimes charged. Furthermore, this evidence was essential to provide the jury with a "complete story" of the events that led to Williams's being identified as the person who perpetrated the crimes charged. Evidence of the stolen vehicle was admissible under Mississippi Rule of Evidence 404(b) and Mississippi case law. In addition, said evidence was probative to show Williams was involved in the armed robbery, kidnapping, and possession of a firearm by a convicted felon. The probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.

## CONCLUSION

¶51.    For the reasons stated above, we find all assignments of error to be meritless, and we affirm the conviction and sentence.

¶52.    **COUNT I: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE (25) YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF KIDNAPPING AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH THE SENTENCE IN COUNT I. COUNT III: CONVICTION OF POSSESSION OF A HANDGUN BY A CONVICTED FELON AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT III SHALL RUN CONSECUTIVELY WITH THE SENTENCE IN COUNT I.**

**WALLER, P.J., EASLEY, CARLSON, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J.**

**GRAVES, JUSTICE, DISSENTING:**

¶53. Today, the majority offers a full analysis of this Court's decision in *Rigby*, penned by Chief Justice Smith, as it relates to one of the issues raised by Williams on appeal: Whether the trial court abused its discretion in denying a motion to sever counts against the defendant, or alternatively, in refusing to allow the defendant to stipulate to a prior conviction of armed robbery. *Rigby v. State*, 826 So. 2d 694 (Miss. 2002). The majority finds that "[i]n light of this Court's interpretation of *Old Chief I* in *Rigby*, the trial court erred when it denied Williams's offer to stipulate to his prior conviction." Ultimately, however, the majority finds that the denial of Williams's offer to stipulate to his prior armed robbery conviction amounts to harmless error. While I agree with the majority's interpretation of *Rigby* as it applies to the instant case, I respectfully disagree that the trial court's denial of Williams's offer to stipulate to his prior conviction is mere harmless error.

¶54. The United States Supreme Court in *Old Chief I* came to its holding after thoroughly analyzing Federal Rules of Evidence 403 and 404(b), as well as the common law. In *Old Chief I* the Court held:

> Given these peculiarities of the element of felony-convict status and of admissions and the like when used to prove it, there is no cognizable difference between the evidentiary significance of an admission and of the legitimately probative component of the official record the prosecution would prefer to place in evidence. For purposes of the Rule 403 weighing of the probative against the prejudicial, the functions of the competing evidence are distinguishable only by the risk inherent in the one and wholly absent from the

22

other. In this case, as in any other in which the prior conviction is for an offense likely to support conviction on some improper ground, the only reasonable conclusion was that the risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available.

*Old Chief v. United States*, 519 U.S. 172, 191, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).

While *Old Chief I* interprets the Federal Rules of Evidence, this Court has found that because the Mississippi Rules of Evidence are generally the same as the Federal Rules of Evidence, it is proper to construe our evidentiary rules using federal case law interpreting corresponding federal rules. *See Hall v. State*, 691 So. 2d 415, 420 n.3 (Miss. 1997). Furthermore, as recognized by the majority, the Court applied the rule from *Old Chief I* in *Rigby,* finding "that where evidence of a prior conviction is not an essential element, as it is in DUI cases, that a trial court should accept a defendant's offer to stipulate and grant a limiting instruction."

¶55.    "In *Thomas v. State*, 711 So. 2d 867, 872 (Miss. 1998), this Court discussed the basic test for harmless error, wherein we stated, 'the inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether the error was unimportant in relation to everything else the jury considered on the issue in question.'" *Tanner v. State*, 764 So. 2d 385, 399-400 (Miss. 2000). The majority offers no reasonable explanation as to how such abuse of discretion could be considered harmless error except to say, "Williams's conviction is supported by overwhelming evidence, including the victim's photo line-up identification, the victim's testimony, corroborating gas station surveillance videotape, and 911 audiotape." Absent a specific inquiry to each juror as to what facts led to his or her decision to find Williams guilty, the majority is merely speculating that the other facts led the jury to reach

23

a guilty verdict rather than the "improper ground," the admission of Williams's prior armed robbery conviction. *Old Chief*, 519 U.S. at 191.

¶56. Therefore, I respectfully dissent and would reverse and remand the case for a new trial.

**DIAZ, P.J., JOINS THIS OPINION.**